SOTOMAYOR, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 18A142

_____

## BILLY RAY IRICK *v.* TENNESSEE

ON APPLICATION FOR STAY

[August 9, 2018]

The application for stay of execution of sentence of death presented to JUSTICE KAGAN and by her referred to the Court is denied.

JUSTICE SOTOMAYOR, dissenting from the denial of the application for stay.

Tonight the State of Tennessee intends to execute Billy Ray Irick using a procedure that he contends will amount to excruciating torture. During a recent 10-day trial in the state court, medical experts explained in painstaking detail how the three-drug cocktail Tennessee plans to inject into Irick's veins will cause him to experience sensations of drowning, suffocating, and being burned alive from the inside out. *Abdur'Rahman* v. *Parker*, No. 18–183–II(III) (Ch. Ct. Davidson Cty., Tenn., July 26, 2018), p. 21, and n. 7 (generally crediting the testimony of plaintiffs' experts); Application for Stay of Execution 8–11 (summarizing that testimony); see also *Arthur* v. *Dunn*, 580 U. S. ___, ___ (2017) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 2). The entire process will last at least 10 minutes, and perhaps as many as 18, before the third drug (potassium chloride) finally induces fatal cardiac arrest. No. 18–183–II(III), at 25–26. Meanwhile, as a result of the second drug (vecuronium bromide), Irick will be "entirely paralyzed, unable to move or scream." *Arthur*, 580 U. S., at ___ (opinion of SOTOMAYOR, J.) (slip op., at 2).

But Irick may well be aware of what is happening to him.  In theory, the first drug in the three-drug protocol, midazolam, is supposed to render a person unable to feel pain during an execution.  But the medical experts who testified here explained that midazolam would not work, and the trial court credited that testimony.  Application for Stay of Execution 8–11; No. 18–183–II(III), at 21; see also *Arthur*, 580 U. S., at ___–___ (opinion of SOTOMAYOR, J.) (slip op., at 3–4) (describing similar evidence in that case).  If the drug indeed fails, the consequences for Irick will be extreme: Although the midazolam may temporarily render Irick unconscious, the onset of pain and suffocation will rouse him.  And it may do so just as the paralysis sets in, too late for him to alert bystanders that his execution has gone horribly (if predictably) wrong.

The State does not appear to have rebutted meaningfully any of this evidence.[1]  See No. 18–183–II(III), at 21, n. 7

--------

[1] I say "appear," and give only a general description of the evidence apparently introduced at trial, because in the rushed context of this emergency application, the trial record is not before this Court.  I therefore rely on the state courts' orders and the parties' filings to discern what that record is likely to show.

The application comes to this Court in a hurried posture because Tennessee first adopted its current midazolam-based protocol only in January of this year.  No. M1987–00131–SC–DPE–DD (Tenn., Aug. 6, 2018), p. 2.  Irick, along with 32 coplaintiffs also under sentence of death, promptly challenged it.  *Ibid.*  With Irick's August 9 execution date looming, the parties and the court brought this complex case to trial in a matter of months.  See *ibid.*  The trial court issued its decision on July 26, Irick filed a notice of appeal and moved to vacate his execution date on July 30, and a divided Supreme Court of Tennessee denied Irick's motion August 6.  *Id.,* at 3, 6.  In the meantime, the Tennessee Court of Appeals issued an order advising that it would not have sufficient time to consider the issues raised by Irick's appeal before his scheduled execution.  *Abdur'Rahman* v. *Parker*, No. M2018–01385–COA–R3–CV (July 30, 2018).  Given the precipitous pace of proceedings, the Tennessee Supreme Court rendered its decision on Irick's motion to vacate without the benefit of the pleadings, trial transcripts, or exhibits on which the trial court relied in reaching its decision.  No.

("The Defendants' two experts, while qualified, did not have the research knowledge and [e]minent publications that Plaintiffs' experts did"). As noted above, the trial court credited the evidence put on by Irick and his co-plaintiffs, finding that they "established that midazolam does not elicit strong analgesic [*i.e.,* pain-inhibiting] effects," and that therefore Irick "may be able to feel pain from the administration of the second and third drugs." *Id.,* at 21. Those are the drugs that will paralyze him and create sensations of suffocation and of burning that "'may well be the chemical equivalent of being burned at the stake'" before eventually stopping his heart. *Arthur*, 580 U. S., at ___ (opinion of SOTOMAYOR, J.) (slip op., at 2) (quoting *Glossip* v. *Gross*, 576 U. S. ___, ___ (2015) (SOTOMAYOR, J., dissenting) (slip op., at 2)). Accounts from other executions carried out using midazolam lend troubling credence to the trial court's finding. See No. 18–183–II(III), at 28 (noting testimony describing inmates' "grimaces, clenched fists, furrowed brows, and moans" during lethal injection executions, including by use of midazolam); *Glossip*, 576 U. S., at ___ (SOTOMAYOR, J., dissenting) (slip op., at 19–20).

Given the Eighth Amendment's prohibition on "cruel and unusual punishments," one might think that such a finding would resolve this case in Irick's favor. And to stay or delay Irick's execution, the Tennessee Supreme Court needed only to conclude that it is likely (not certain) that Irick can persuade an appellate court that his claim has merit. See Tenn. Sup. Ct. Rule 12(4)(E) (2017); No. M1987–00131–SC–DPE–DD, at 3.

But the Tennessee Supreme Court did not find any such likelihood and declined to postpone Irick's execution to allow appellate review of his claims. *Id.,* at 3–5. The

───────────

M1987–00131–SC–DPE–DD (Tenn., Aug. 6, 2018) (Lee, J., dissenting), p. 4).

court instead effectively let stand the trial court's order, which held that Irick's extensive and persuasive evidence describing the ordeal that awaits him raised no constitutional concerns. The trial court offered two independent reasons for its holding: first, that Irick had not proven that another, less painful method of killing him was available to the State; and second, even assuming Irick had proven a readily available alternative, that this Court would not consider the painful ordeal that Irick faces sufficiently torturous to violate the Eighth Amendment. No. 18–183–II(III), at 9, 21–22. Thereafter, the Tennessee Supreme Court refused to postpone Irick's execution on the ground that he was unlikely to succeed in disturbing the trial court's no-available-alternative holding on appeal. No. M1987–00131–SC–DPE–DD, at 4. The court did not directly address the trial court's second rationale, but implied that it agreed. See *id.,* at 5.

In *Glossip* v. *Gross*, 576 U. S. \_\_\_, this Court did impose the "perverse requirement that inmates offer alternative methods for their own executions." *McGehee* v. *Hutchinson*, 581 U. S. \_\_\_, \_\_\_ (2017) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 2). Without the trial court record before me, I cannot say definitively that the Tennessee courts are wrong that Irick failed to carry that burden. But Irick's contentions raise serious questions about the courts' conclusion.

Irick raised two different alternative methods in the trial court: a single-drug procedure using only a drug called pentobarbital or, alternatively, a modification of the current procedure to omit the administration of vecuronium bromide as a paralytic at its second step. Tennessee argued, and the trial court found, that pentobarbital was currently unavailable to the State notwithstanding its efforts to find a supplier. No. 18–183–II(III), at 9–19. Irick claims, however, that the court improperly ignored

indirect evidence proving pentobarbital's availability. If that contention is accurate, then that could constitute legal error. Further, Irick maintains the trial court improperly refused to permit him to amend the pleadings to argue that simply omitting the paralytic drug would be a suitable alternative, see No. M1987–00131–SC–DPE–DD, at 4–5, even though it appears such an amendment might not have necessitated any additional testimony, see No. M1987–00131–SC–DPE–DD (Lee, J., dissenting), at 5–6.[2] The record would shed light on the validity of Irick's contentions.

If Irick did fail to plead and prove at least one available alternative, this case further illustrates the error of this Court's "macabre challenge" to condemned prisoners that they must propose an alternative method for their own executions. *Arthur*, 580 U. S., at \_\_\_ (opinion of SOTOMAYOR, J.) (slip op., at 1). But given the life-or-death stakes of determining whether the trial court erred in concluding that Irick failed to prove an alternative means of execution, and because Irick makes a nonfrivolous contention that the trial court did so err, see No. M1987–00131–SC–DPE–DD (Lee, J., dissenting), at 4–6, I would grant the stay to allow the state courts more time to consider Irick's claims. See *Barefoot* v. *Estelle*, 463 U. S. 880, 895 (1983).

As to the prediction that this Court would deem up to 18 minutes of needless torture anything less than cruel, unusual, and unconstitutional, I fervently hope the state courts were mistaken. At a minimum, their conclusion that the Constitution tolerates what the State plans to do to Irick is not compelled by *Glossip*, which did not categorically determine whether a lethal injection protocol using

––––––––––

[2] Irick contends that his evidence shows that omitting the paralytic would hasten his death and shorten his suffering. Application for Stay of Execution 12, 16.

midazolam is a constitutional method of execution. See *Arthur*, 580 U. S., at ___ (opinion of SOTOMAYOR, J.) (slip op., at 12). *Glossip*'s majority concluded only that, based on the evidence presented in that case, there was no clear error in the District Court's factual finding that midazolam was highly likely to prevent a person from feeling pain. *Ibid.* (citing *Glossip*, 576 U. S., at ___ (slip op., at 16)). As noted, the trial court here came to a different factual conclusion based on a different factual record, as have others. See *McGehee*, 581 U. S., at ___ (opinion of SOTOMAYOR, J.) (slip op., at 2) (noting a district court's "well-supported finding that midazolam creates a substantial risk of severe pain"); *Otte* v. *Morgan*, 582 U. S. ___ (2017) (SOTOMAYOR, J., dissenting from denial of application for a stay and denial of certiorari) (similar).

If it turns out upon more sober appellate review that this case presents the question, I would grant certiorari to decide the important question whether the Constitution truly tolerates executions carried out by such quite possibly torturous means.

\*    \*    \*

In refusing to grant Irick a stay, the Court today turns a blind eye to a proven likelihood that the State of Tennessee is on the verge of inflicting several minutes of torturous pain on an inmate in its custody, while shrouding his suffering behind a veneer of paralysis. I cannot in good conscience join in this "rush to execute" without first seeking every assurance that our precedent permits such a result. No. M1987–00131–SC–DPE–DD (Lee, J., dissenting), at 1. If the law permits this execution to go forward in spite of the horrific final minutes that Irick may well experience, then we have stopped being a civilized nation and accepted barbarism. I dissent.